UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES MARTIN PAGE, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

JAGUAR LAND ROVER NORTH AMERICA, LLC,

Defendant.

Case No. _____

JURY TRIAL DEMANDED

**CLASS ACTION COMPLAINT**

Plaintiff James Martin Page ("Plaintiff"), by and through his attorneys, brings this action, both individually and on behalf of all others similarly situated, against Defendant Jaguar Land Rover North America, LLC and alleges as follows:

**INTRODUCTION**

1.      This is a consumer class action concerning a failure to disclose material facts and safety concerns to consumers.

2.      Defendant Jaguar Land Rover North America, LLC ("JLRNA") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced certain Defender (model year 2020 – onward); Range Rover (model year 2020 – onward); Range Rover Sport (model year 2019 – onward); Range Rover Velar (model year 2020 – onward); Range Rover Evoque (model year 2019 – onward); Discovery (model year 2020 – onward); and Discovery Sport (model year 2019 – onward) model vehicles (collectively, "Class Vehicles") containing a serious safety defect.

3.      The Class Vehicles are considered "Mild Hybrid Electric Vehicles" ("MHEV"), which is advertised as including improved efficiency and performance. The MHEV is comprised of three primary components: the battery, the Belt-integrated Starter Generator ("BiSG"), and converter. Each MHEV—and Class Vehicle—contains a 48V lithium-ion battery, which stores energy captured during braking (that can be deployed when needed). The BiSG functions as both a motor and generator, first by using energy from the battery to assist the engine and enabling a smoother engine restart for the vehicle's auto start/stop system, and second recapturing some of the vehicle's momentum during braking to generate electricity and store it back into the battery in what is known as "regenerative braking." The converter—sometimes also called the DCDC converter—functions to convert the electric energy stored in the 48V battery for use in the vehicle's 12V battery, which powers other essential functions of the vehicle, such as lights, radio, and vehicle computers. This functionality works in tandem to *purportedly* improve fuel efficiency through regenerative braking and enhanced performance.[1]

4.      Problematically, despite its purported benefits, the MHEV technology in Class Vehicles contains a serious defect. The DCDC converter, which is an essential component of the MHEV technology—and, thus, an essential component of the Class Vehicles themselves—can fail prematurely, which prevents energy stored in the 48V battery from being converted for use by the 12V battery, which leaves essential functionality of the vehicle unable to operate (the "Defect"). This failure can cause charging system malfunctions, excessive battery drain, display of errors and warnings, loss of electrical component functionality, issues starting the vehicle, and engine

---

[1] Land Rover MHEV 48V System Explained Simply, https://sx-tool.com/en/land-rover-mhev-48v-system-explained (last visited Mar. 27, 2026).

stalling. If the vehicle is in motion when failure occurs, it can cause the vehicle to display a "Stop Safely Electrical Fault Detected" warning shortly before the vehicle completely stalls.

5. This Defect is a serious safety concern, as it can manifest at any time, including while the Class Vehicle is in motion. When it manifests, the Defect causes the vehicle to stall and cease operation, leaving the vehicle and its passengers at risk of involvement in a crash. Once the Defect manifests, the vehicle may lose essential functionality, may have trouble starting the engine, or may be unable to operate entirely, leaving the vehicle immobile.

6. The Defect is inherent in each Class Vehicle and was present at the time of purchase.

7. The Defect is a serious issue impacting Class Vehicles, with many Class Members complaining to JLRNA, its authorized dealers, to the National Highway Traffic Safety Administration ("NHTSA"), and to other third-party consumer forums. For example, Plaintiff experienced the Defect, which resulted in the complete stall of his Class Vehicle. When Plaintiff complained to his local Land Rover dealership, he was told that the dealership was already servicing multiple other Class Vehicles for the same Defect. And other Class Members nationwide have been complaining about the Defect on various Land Rover and Range Rover message boards and on social media.[2]

---

[2] *E.g.*, *Anyone Else Dealing With the DC/DC Converter Being Backordered*, Reddit, https://www.reddit.com/r/NewDefender/comments/1q4v5g3/anyone_else_dealing_with_the_dcd c_converter_being/ (last visited Mar. 27, 2026); *DC-DC Converter Failure*, Disco Sport Forums.co.uk, https://www.discosportforums.co.uk/threads/dc-dc-converter-failure.15659/ (last visited Mar. 27, 2026); *Stop Safely – Electrical Fault Detected*, Reddit, https://www.reddit.com/r/LandRover/comments/1im27ye/stop_safely_electrical_fault_detected/ (last visited Mar. 27, 2026).

8.     Indeed, the Defect is so widespread, and repairs relating to the Defect are so numerous, that the parts necessary for repairs have been backordered, causing numerous delays for Class Members awaiting repairs of the Defect in their Class Vehicles.

9.     Problematically, although JLRNA has undertaken to repair the Defect, it replaces components with the same equally defective components, such that the Defect still exists and can manifest in Class Vehicles, even after repair. Whatever remediation efforts JLRNA has undertaken to date are futile and do not meaningfully address the Defect.

10.     JLRNA knew, or otherwise reasonably should have known, about this Defect. Despite its knowledge and its superior position, JLRNA failed to disclose the existence of the Defect to Plaintiff and Class Members, or otherwise actively concealed the existence of the Defect from them. Had Plaintiff and Class Members known about this serious Defect at the time of purchase, they either would not have purchased their Class Vehicles or else would have paid substantially less for their Class Vehicles. Plaintiff and Class Members did not receive the benefit of their bargain.

11.     JLRNA has damaged Plaintiff and Class Members through its improper conduct.

## THE PARTIES

### Plaintiff James Martin Page

12.     Plaintiff James Martin Page is a South Carolina citizen and Lexington County resident.  Plaintiff is the owner of a 2023 Land Rover Defender with Vehicle Identification Number SALE27EU7P2170206.

### Defendant Jaguar Land Rover North America, LLC

13.     Defendant JLRNA is a United States limited liability company organized in and under the laws of the State of Delaware, with its principal place of business in Mahwah, New

4

Jersey. Thus, for purposes of jurisdiction, Defendant JLRNA is a citizen of the State of Delaware and the State of New Jersey.

14. Defendant JLRNA is a wholly owned subsidiary of Tata Motors, a business entity of the Republic of India.

15. Defendant JLRNA is and has been engaged in the business of designing, manufacturing, distributing, warranting, marketing, advertising, and selling products to consumers throughout the United States, including the Class Vehicles.

16. In order to sell vehicles to the general public, Defendant JLRNA enters into agreements with authorized dealerships who engage in retail sales with consumers, including Plaintiff and Class Members. These agreements, and the relationship between Defendant JLRNA and its authorized dealerships, afford Defendant JLRNA a significant amount of control over the actions of its authorized dealerships, including control over the distribution, warranting, repair, marketing, advertising, and selling of Class Vehicles.

17. Defendant JLRNA is responsible for all representations regarding the Class Vehicles, and all marketing, advertising, and warranties of the Class Vehicles.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, which provides for federal jurisdiction in class actions with minimal diversity when damages exceed five million dollars, exclusive of interest and costs. The Court has supplemental subject matter jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

19. Defendant JLRNA is a limited liability company organized in and under the laws of the State of Delaware, and it maintains its principal place of business in Mahwah, New Jersey.

5

Thus, Defendant JLRNA is a citizen of the State of New Jersey. Venue is thus appropriate in this District pursuant to 28 U.S.C. § 1391.

**GENERAL FACTUAL BACKGROUND**

**The Defect**

20.    Defendant designs, manufactures, distributes, markets, advertises, and sells (through its authorized dealers) all Class Vehicles.

21.    Each Class Vehicle is an MHEV.

22.    The MHEV technology is comprised of multiple components working in tandem—the battery, the BiSG, and the DCDC converter. The 48V lithium-ion battery stores energy for later use. The BiSG performs two functions: first, to use energy from the battery to assist the engine and second, to recapture energy during braking to generate electricity for storage in the battery for later use. The DCDC converter converts the electrical energy stored in the 48V battery for use in the Class Vehicle's 12V battery, which powers other essential functions of the vehicle, such as the lights, radio, and vehicle computers.[3] JLRNA touts that this MHEV technology improves the efficiency and performance of the Class Vehicles.

23.    JLRNA, however, fails to explain to consumers that the technology contains a serious Defect that, when it manifests, poses a serious safety risk to drivers, passengers, and others on the road.

24.    The DCDC converter can fail prematurely, which prevents energy stored in the 48V battery from being converted for use by the 12V battery, which leaves essential functionality of the vehicle unable to operate—including possibly leaving the vehicle entirely unable to function

---

[3] Land Rover MHEV 48V System Explained Simply, https://sx-tool.com/en/land-rover-mhev-48v-system-explained (last visited Mar. 27, 2026).

6

or drive. This Defect can cause charging system malfunctions, excessive battery drain, display of errors and warnings, loss of electrical component functionality, issues starting the vehicle, and engine stalling. If the vehicle is in motion when failure occurs, it can cause the vehicle to display a "Stop Safely Electrical Fault Detected" warning shortly before the vehicle completely stalls.

25.    The Defect is a widespread, known issue. There are many consumer complaints describing manifestation of the Defect in their Class Vehicles.

26.    In many instances, JLRNA has agreed to repair the Defect—or, rather, to *attempt* to remediate the Defect—under the vehicle's New Vehicle Limited Warranty. However, these purported repairs do not actually address or remediate the Defect. Instead, these "repairs" only function to replace the DCDC converter with the same, equally defective component. Thus, even after repair or replacement, the Defect still exists in the Class Vehicle, meaning the Defect can manifest again at any time—and, again, potentially in dangerous ways, continuing to pose serious safety risks to drivers, passengers, and others on the road.

27.    Also problematically, the manifestation of the Defect is such a *rampant* and *common* issue that Class Members have sought repair so often that JLRNA does not have a sufficient stock of DCDC components—even if such stock of components remain defective in their own right—that Class Members have experienced *significant* delays in timely receiving repairs. These delays often require Class Members to pay additional out-of-pocket expenses to obtain other forms of transportation while they wait—for extended periods of time—for these "repairs" of the Defect to be completed.

**JLRNA's New Vehicle Limited Warranty**

28.    JLRNA issued a New Vehicle Limited Warranty with each Class Vehicle.

29.    The "New Vehicle Limited Warranty" is limited to four (4) years from the date of first use or 50,000 miles, whichever occurs first.

30.    According to the Guidelines Applicable to Warranties for Plaintiff's vehicle, the New Vehicle Limited Warranty "covers any factory-supplied component of the Land Rover vehicle that is defective during the basic warranty period," except items specifically excluded.[4]

31.    The DCDC converter—and the Defect—at issue is not excluded by the New Vehicle Limited Warranty.  The parts and labor are therefore covered by the New Vehicle Limited Warranty.

32.    The warranty provides that only a Land Rover retailer or authorized repairer may perform repairs, adjustments, and replacement of parts under the New Vehicle Limited Warranty, unless it is an emergency situation where no Land Rover retailer or authorized repairer is available and it not possible to get to a retailer or authorized repairer.[5] In those emergency situations, "the owner is entitled to reimbursement for emergency repairs to items covered under this warranty, but the reimbursement is not to exceed the manufacturer's suggested retail price for all warranted parts replaced, labor charges based on the manufacturer's recommended time allowance for the warranty repair and the geographically appropriate hourly labor rate."[6]

33.    The repair of the Defect pursuant to this warranty is only to replace the impacted components—usually the DCDC converter—with a new DCDC converter.

34.    However, because the replacement DCDC converter is the same, equally defective component, any "repair" fails to actually remediate the Defect.

---

[4]    *See    Vehicle    Warranties    –    2023    Defender*,    Land    Rover, https://www.ownerinfo.landrover.com/document/3E/2023/1645045/proc/G2951784/G2951785? vin=SALE27EU7P2170206 (last visited Mar. 27, 2026).
[5] *Id.*
[6] *Id.*

35.    Thus, the warranty fails of its essential purpose, because it fails to truly remediate the Defect.

36.    JLRNA's conduct to repair the Defect with the same, equally defective component—which remains prone to premature failure—allows JLRNA to return Class Members their Class Vehicles, which remain defective, for use until the Defect manifests outside the warranty period. When this occurs, JLRNA can refuse warranty coverage and charge Class Members for repairs—which themselves still fail to actually remediate the Defect and return an equally defective Class Vehicle with the understanding that the same cycle will repeat. This permits JLRNA and its authorized dealers to profit from continuing repairs, all related to the same Defect.

37.    Further, the warranty is unconscionable. Plaintiff purchased his Class Vehicle from a JLRNA authorized dealer, and with that sale, was presented with the terms of the warranty as drafted by JLRNA. While Plaintiff has some ability to negotiate price of the vehicle, he has no ability to negotiate the terms of the warranty. Plaintiff had no bargaining power with respect to the warranty, was presented with it as a *fait accompli,* and had to accept it in the exact form in which it was presented to them, which occurred after the vehicle purchase transaction was completed. Plaintiff had no meaningful choice regarding any aspect of the warranty or its terms, including durational limitations of time and mileage. The terms of the warranty unreasonably favored JLRNA over Plaintiff and Class Members; a gross disparity in bargaining power existed as between JLRNA and Plaintiff and Class Members; and JLRNA knew or should have known that the Defect would manifest in the Class Vehicles both before and after the warranty, thereby rendering the time and mileage limitations insufficient, inadequate, and unconscionable.

38.     JLRNA drafted the terms of the warranty in part by using its exclusive, superior knowledge of the existence and likely manifestation of the Defect. Plaintiff and Class Members were entirely ignorant of the Defect when purchasing their Class Vehicles and when presented with the warranty. Plaintiff's and Class Members' acceptance of the warranty and its terms, including any disclaimers or durational limits, was neither knowing nor voluntary. JLRNA knew or reasonably should have known at the time of sale that the Class Vehicles were defective and would fail prematurely solely because of a defect in design, materials, and workmanship—the Defect. Plaintiff and Class Members, on the other hand, had no notice of or ability to detect the Defect prior to purchasing the Class Vehicles. For this reason, the terms of the warranty unreasonably favored JLRNA over Plaintiff and Class Members, and Plaintiff's and Class Members' acceptance of the warranty's durational limitations, to the extent they are found to apply so as to exclude instances where the Defect manifested outside of them, was neither knowing nor voluntary, thereby rendering such limitation unconscionable and ineffective.

39.     Plaintiff and Class Members were also not aware and could not have been aware that JLRNA would willfully not inform them of the Defect, which affects the safety of the Class Vehicles, and that the Defect could manifest outside of the durational limits of the warranty, despite JLRNA's knowledge of this. JLRNA's conduct renders the warranty unconscionable.

**JLRNA Knew or Reasonably Should Have Known About the Defect**

40.     JLRNA designs, manufactures, tests, markets, advertises, and sells (through its authorized dealers) all Class Vehicles.

41.     On information and belief, JLRNA engages in a strict testing regimen for its vehicles, including Class Vehicles, prior to their release. Thus, on information and belief, JLRNA performed testing on Class Vehicles prior to their original sale.

10

42. Given this pre-sale testing of Class Vehicles, JLRNA knew, or otherwise reasonably should have known, about the Defect.

43. Further, on information and belief, JLRNA regularly tracks consumer complaints regarding its vehicles, including Class Vehicles, including through NHTSA, through third-party consumer forums, through its own warranty claims data, and through repairs performed by its authorized dealers.

44. Given the high number of consumer complaints about the Defect, JLRNA knew, or otherwise reasonably should have known, about the Defect, either prior to the sale of Class Vehicles or certainly soon thereafter.

45. Moreover, given the high amount of repairs related to the Defect—both pursuant to the warranty and outside of warranty coverage—JLRNA knew, or otherwise reasonable should have known, about the Defect, either prior to the sale of Class Vehicles or certainly soon thereafter.

46. Indeed, given the high amount of repairs related to the Defect, there has been a shortage (or backorder) of related components, including the defective DCDC components. JLRNA is certainly aware of this shortage of components created by the high number of Defect-related repairs.

47. Manifestation of the Defect is so common that JLRNA issued a Technical Service Bulletin ("TSB") related to the Defect on December 18, 2024: SSM76173 ("MHEV DCDC Internal Failure with Warning Message Displayed on the Instrument Panel").[7] On information and belief, this TSB was issued after JLRNA gathered data from testing and tracking consumer complaints and repair data through NHTSA, through third-party consumer forums, through its own warranty claims data, and through repairs performed by its authorized dealers.

---

[7] https://static.nhtsa.gov/odi/tsbs/2025/MC-11012408-0001.pdf (last visited Mar. 27, 2026).

48.     TSB SSM76173 lists the following impacted models, all of which are included among Class Vehicles: Defender (model year 2020 – onward); Range Rover (model year 2022 – onward); Range Rover Sport (model year 2023 – onward); Range Rover Velar (model year 2020 – onward); Range Rover Evoque (model year 2019 – onward); Discovery (model year 2020 – onward); and Discovery Sport (model year 2019 – onward). This TSB noted:

> Certain vehicles are displaying a 'Stop Safely Electrical Fault Detected' warning message on the instrument panel. In some cases, a loss of 12V charging may also be experienced. Visible signs of damage to the connectors of the 48V DCDC converter and connector harness may also be present.

The TSB further noted that the "cause"—that is, the Defect—may be "[i]nternal failure in the 48V DCDC converter."[8]

49.     This TSB called for the Class Vehicles' DCDC converter to be "inspect[ed] . . . for signs of failure and damage to the connectors and harness. If damage is confirmed, **renew the DCDC converter**..."[9]

50.     Prior to this TSB, JLRNA had issued a separate "Global Service Action" (number N861) to its authorized dealers on February 28, 2024, titled "Mild Hybrid Electric Vehicle (MHEV) Battery Offline." This Global Service Action was issued "to provide the relevant repair instructions, parts and warranty information" to address the MHEV defect. It listed the following impacted models, all of which are included among Class Vehicles: Defender (model year 2020 – onward); Range Rover (model year 2020 – 2022); Range Rover Sport (model year 2019 – 2022); Range Rover Evoque (model year 2019 – 2020); and Discovery Sport (model year 2020).[10]

---

[8] *Id.*

[9] *Id.* (emphasis in original) (calling for the defective component to be replaced with the *same, equally defective* component).

[10] https://www.google.com/url?sa=t&source=web&rct=j&opi=89978449&url=https://static.nhtsa.g

51.     This Global Service Action explained:

> [T]he 48V Mild Hybrid Electric Vehicle (MHEV) battery enters an offline state and no longer communicates or functions as intended. This can result in illumination of the Malfunction Indicator Lamp (MIL), loss of start/stop functionality and no communication during diagnostic sessions.

The Global Service Action noted that vehicle owners "[a]t the next opportunity, [were] requested to repair the vehicle." Any owner that indicated they had already paid for repair of this MHEV defect should be reimbursed the "full cost of the repair."[11]

52.     Despite this knowledge of the Defect, JLRNA has still failed to disclose the existence of the Defect to—or continues to actively conceal the Defect from—Plaintiff and Class Members.

53.     Given that JLRNA designed, manufactured, tested, tracked consumer data, marketed, advertised, and sold (through its authorized dealers) all Class Vehicles, JLRNA was in a superior position to know of the Defect than Plaintiff and Class Members. Given this superior position of knowledge, JLRNA had a duty to disclose the existence of the Defect to Plaintiff and Class Members.

54.     JLRNA's failure to disclose the existence of the Defect—or its active concealment of the Defect—violated this duty owed to Plaintiff and Class Members.

**Consumers Have Complained about the Defect**

55.     The Defect is such a persistent, rampant issue in Class Vehicles that consumers, including Class Members have regularly complained about the Defect.

---

ov/odi/tsbs/2024/MC-10251549-0001.pdf&ved=2ahUKEwiKqMfwm8CTAxXzx8kDHTWCJZAQFnoECB0QAQ&usg=AOvVaw3EG4GqLDBm6G5TfkJgSvBu (last visited Mar. 27, 2026)

[11] *Id.*

56.     These complaints about the Defect are made to JLRNA directly when Class Members bring their Class Vehicles to JLRNA's authorized dealers for repairs of the Defect and when warranty-related claims are made regarding the Defect. On information and belief, when authorized dealers make repairs of the Defect, the dealers provide information to JLRNA, including requests for warranty or good will coverage of the costs of parts and labor.

57.     Beyond tracking warranty, good will, and authorized dealer repair and complaint data, on information and belief, JLRNA tracks consumer complaints lodged to third parties, including complaints made through NHTSA and through third-party consumer forums.

58.     Numerous Class Members have brought complaints to NHTSA regarding the Defect, the defective MHEV technology in their vehicles, and the dangerous manifestation of the Defect. Examples of these NHTSA complaints are included below:

> **2185892 LAND ROVER DEFENDER    2022    20260313**
> **Coram, NY:** I believe there is an issue with the DC to DC converter. Had an incident when the vehicle was idling for at 30 mins while cleaning snow in driveway after a storm. I received an warning battery low. As thought this was odd I turned it off. waited a few hours returned and the warning was gone. I had JLR dealer look at the issue. I was told the main battery was faulty and replaced, this was in end of DEC 2025. Then weeks later [around Jan 18th 2026] when it was really cold out and driving to JFK airport. while in route i received an very generic electrical system fault warning. As i was leaving 1 of the terminals at JFK. on the exit ramp of the terminal I had complete electrical failure was lucky enough to be able to be able to pull to shoulder, but was coasting about 1-2 mph, and stop. It took 3 attempts to restart the vehicle, when it started normally and all electrical was acting normal. if this happened while on the highway it would have caused an accident and i believe injuries. i will say the hazard warning lights were still working. I have also been noticing that the digital dashboard display brightness will fade in and out anytime of the day and weather randomly. Today this happened and received a low coolant warning and a tire low warning at the same time. I check the coolant level and it is normal. I check the tire pressures and they are normal.

**2187361 LAND ROVER RANGE ROVER 2020 20260311 Wall, NJ:** On March 11, 2026, the vehicle's DC/DC Converter failed completely without warning. It was towed to the Land Rover of Monmouth (NJ) where this failure was confirmed. The failure of the DC/DC converter resulted in the vehicle going completely "dead" while driving with my wife and children. There was no warning. Fortunately for my family and I, it occurred on a side street by my home and did not occur on a highway or other busy road. Had this occurred on a highway or busy road, this would have absolutely put our lives in danger. As noted, the failure of the DC/DC converter was confirmed by the Land Rover of Monmouth (NJ) authorized dealership (I have a video from the dealership stating and confirming the failure). There were zero warnings at the time it occurred; it just lost power and shut down. Based on my research after this incident, it appears to be a pervasive problem with Land Rover and while there appear to be active recalls for certain Land Rover models, inexplicably, there is no current recall for this particular model. My wife and I are very concerned that even if/when it is repaired, this will happen again. This is the primary vehicle my wife uses for transportation with our young children and I am extremely afraid of the risk that this poses to their lives. I've notified the dealership from where I purchased it and was directed to contact Land Rover USA. I have not heard back from Land Rover USA. This well-documented, pervasive defect puts lives at risk and is extremely dangerous. As an attorney, I find Land Rover's knowledge of this frequent and extensive issue -- while only having a limited recall and not providing any information to owners of other Land Rover vehicles -- is a reckless disregard for the safety of others and creates an unreasonable risk of harm to others, like my family.

**2187510 LAND ROVER DEFENDER 2023 20260211 Ankeny, IA:** DC-DC converter failure. Received dashboard message "Stop safely Electrical fault detected"

**2164626 ROVER DEFENDER 2023 20251214 Woodbury, NY:** My car died on December 14, 2025 when I was pulling out of my driveway. It read "stop safely electrical fault detected." And then shut down and would not turn on. Then it said "battery low. Please start engine." But the car would not start. I had to get it towed to the dealer. They told me it was a the DC converter or the epic module. They said this is a company wide issue with the 2023 defenders and they do not have the part in stock and that it is on back order. Right now they are stating that the part may be in in mid February. Previous to this issue I also had issues two times with my car stating engine coolant issues and had to bring it to the dealer two times to get fixed.

15

**2164560 LAND ROVER DEFENDER 2022 20251201 Seattle, WA:** System electrical failure due to a faulty part (DC/DC Converter). This essentially prevents the charging system so the battery dies and the car becomes undriveable. When this occurred to us, the car was in the middle of the road and could not start or move impeding traffic. This is a growing problem among owners of this vehicle and so much so that the part is currently backordered due to so much demand. A warning message was displayed stating "Drive Safely: Electrical Fault Detected".

**2164231 LAND ROVER DEFENDER 2021 20251201 San Francisco, CA:** DC/DC converter failure

**2163958 LAND ROVER DISCOVERY 2023 20251208 Columbia, MO:**       The DC-DC converter went out in December. The vehicle has 53,000 miles on it, so it is just out of warranty. I live 100 miles from the nearest dealership so I had it towed to a local shop. I was originally told the part was on back order until Mid-February. I was told yesterday, they think it may not be available until May 2026. If this is such a big issue that they can not keep up with the part, why is this not a recall item?

**2162879 LAND ROVER DISCOVERY 2022 20250602 McAllen, TX:** I was driving on Ware Rd about 50 MPH on my way home. The vehicle turned off while I was driving and had to turn into a street before the vehicle stopped moving. There were no warning lamps, messages or other symptoms prior to the failure.  If I had been on a highway, there would not have been a way for me to get out of dangerous traffic.  The dealer checked the vehicle and determined that it had suffered a catatrophic engine failure.  They had no explanation on the cause of the problem.  My vehicle had just run out of warranty with only 60,000 miles on it.

**2162847 LAND ROVER DISCOVERY 2024 20251220 Carmel, IN:** 3rd time the vehicle has experienced a electrical fault and renders the car undrivable and will shut down while driving regardless of where you are.   Each time the vehicle has stopped while driving on an interstate.

**2162327 LAND ROVER DISCOVERY 2021 20250404 Grants Pass, OR:** While driving my 2021 Land Rover Discovery (MHEV) in active traffic, the vehicle suddenly displayed an "Electrical system fault – Stop safely" warning. Immediately after the warning, the vehicle lost power and shut down, leaving me stalled in traffic with no ability to safely move the vehicle out of the roadway. There

16

was no prior warning, no gradual degradation, and no driver-caused condition. The shutdown appeared to be related to the 48-volt mild-hybrid electrical system, possibly involving the DC-DC converter or battery management system, which disabled critical vehicle functions. This failure created an immediate safety hazard. I was at risk of being rear-ended and had limited ability to safely exit traffic. The vehicle became effectively inoperable without warning, which is unacceptable in real-world driving conditions. What is especially concerning is that: •The warning instructed me to "stop safely," yet the vehicle did not allow time or power to do so •There were no visible issues beforehand •The issue appears consistent with known Land Rover MHEV electrical failures •Software updates were present, but did not prevent the failure A sudden electrical shutdown in traffic poses a serious safety risk to drivers, passengers, and others on the road. This issue should be investigated for potential defect, recall, or mandatory repair, as it compromises safe vehicle operation.

**2161605 LAND ROVER RANGE ROVER EVOQUE 2025 20250827 Carlsbad, CA:** I am filing this complaint regarding serious and ongoing safety and quality issues with my 2025 Range Rover Evoque S. Since shortly after taking delivery, I have experienced persistent problems that have not been resolved despite multiple service visits over the past year. As a result, I have lost confidence in the safety and reliability of this vehicle. The issues include an overheating wireless charging pad that becomes unsafe to use. This issue has been acknowledged by the dealership as a known problem. During an early service visit, a representative advised me to purchase a third party wireless charger rather than offering a repair. The vehicle also has persistent interior rattling from the rear passenger side that continues despite repeated repair attempts. During my most recent service visit, I was told that the vehicle is built plastic on plastic and that this noise should be expected. Most concerning is an active passenger airbag recall issued Aug. 27, 2025.

**2062653 LAND ROVER RANGE ROVER 2025 20241208 Moseley, VA:** Unsatisfactory Review for 2025 Range Rover SE I purchased a 2025 Range Rover SE in November 2024 for nearly $200,000, expecting a luxury vehicle with reliability to match its price tag. Unfortunately, my experience has been nothing short of a nightmare. In December 2024, just one month after purchase, the vehicle completely died while I was driving on the highway—a terrifying and unacceptable failure for a brand-new car. The vehicle was towed to the dealership, where it has remained ever since. What has made this experience even worse is Range Rover's appalling

customer service. The company's "repurchasing" agreement process, which I initiated nearly two months ago, is lengthy, convoluted, and appears designed to disadvantage the customer at every step. Despite repeated attempts to get answers, there has been no clear timeline for resolution, no updates from anyone with decision-making authority, and absolutely no way to escalate the matter to management. For a vehicle in this price range, I expected premium customer care, but what I've received is the opposite: silence, frustration, and the sense that Range Rover cares more about protecting itself than making things right for its customers. Until Range Rover makes significant improvements to the reliability of its vehicles and its customer service, I cannot recommend this brand to anyone. Buyers beware—you may end up with a luxury-priced lemon and no way to resolve it.

**2055405 LAND ROVER DISCOVERY 2021 20240805 Grants Pass, OR**: I own a 2021 Land Rover Discovery with VIN [XXX] , and I am experiencing issues that align with the national recall for the MHEV battery. My vehicle's start-stop functionality fails intermittently, and the system is in an "offline state," disrupting communication and critical functions.  Additionally, due to these MHEV battery errors, my vehicle cannot receive over-the-air updates provided by Land Rover, further impacting its performance and reliability.  I request that my vehicle be reviewed for inclusion in the recall and that the necessary repairs be covered. This ongoing issue presents a significant inconvenience and safety concern. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**1690869 LAND ROVER DEFENDER 202020200907 Windermere, FL:** WHILE DRIVING MY VEHICLE AT HIGH SPEEDS ON AN INTERSTATE, THE BATTERY WARNING LIGHT ACTIVATED. BEFORE I WAS ABLE TO PULL THE VEHICLE OVER THE AIR CONDITIONER I'LL PROBABLY BEGIN TO STOP WORKING. FOLLOWING THIS, A SERIES OF MULTIPLE WARNING LIGHTS ACTIVATED. THE VEHICLE WOULD NOT ACCELERATE AND I WAS FORCED TO PULL OVER. FOLLOWING THIS, THE VEHICLE WOULD NOT ACTIVATE WHATSOEVER. ALL POWER WAS LOST. I COULD NOT SHIFT GEAR. THE CAR REQUIRED A TOW TO THE LOCAL DEALERSHIP.

**181550 LAND ROVER DISCOVERY 2019 20220528 Eustace, TX:** The car will go dead. Had battery replaced at dealer on 5-28-22. 2 days later the car was dead and will not start. After messing with the negative cable where it's connected to the chassis was able

18

to start the car. After the car was running for about a minute the negative cable was very hot to the touch. This has been an ongoing problem with this car. After see other recalls for this battery cable issue am afraid the car could die while driving it. Our VIN is not associated with any recall. We feel the car is unsafe to drive and can also leave was stranded.

**2167951 LAND ROVER DEFENDER 2023 20260116 Trumbull, CT:** A known LR Defender MHEV system problem. Specifically, a DC-DC converter failure - while driving vehicle on busy highway. Failure systematically shuts down vehicle. Please refer to: Land Rover Charging System Fault: The DC-DC Converter  This is a serious safety issue.  The Defender becomes completely disabled while driving.

**2081229  LAND ROVER DISCOVERY 2021 20250401 Grants Pass, OR:** vehicle is offline; car completely shut down, resulting in loss of power on the road.

59. Further, numerous Class Members have made complaints regarding the Defect on third-party Land Rover forums, which are designed to create communities of JLRNA vehicle owners to discuss JLRNA vehicle issues. On information and belief, JLRNA tracks these forums.

60. For example, consumers on the Disco Sport forum recounted their experiences when the Defect manifested in their vehicles. On a forum post titled "DC-DC Converter failure," one consumer explained that he received a "red warning – stop safely Electrical fault – then modest burning smell," and was later told the "DC-DC converter failed and has been replaced." Other consumers on that same thread recounted their same experience. One consumer explained that they have "needed 2 new batteries, which ma[de him] wonder whether it was a dc-dc converter all along." Another consumer explained they were informed of a "recall" related to the "48v system [being] offline," and while traveling to the authorized dealer for the repair "a warning light came on the dash to say charging system fault detected." They received the recall work and were told

the "DC/DC converter has failed and requires a new one." Numerous other consumers, on this single forum thread alone, recounted the same manifestation of the Defect.[12]

61.     Consumers on Reddit posts, particularly in the r/LandRover subreddit community, recounted the same experiences. On one post, a consumer asked what would cause the "Stop Safely – Electrical Fault Detected" warning to appear, with other consumers echoing this experience. Notably, almost all the consumers on this post who recounted the same manifestation of the Defect indicated they were experiencing long, excessive delays in receiving repairs, with one user stating they were told that repairs could not be performed for "over 2 and a half months."[13]

62.     These delays match other consumer complaints elsewhere on Reddit, in the r/NewDefender subreddit community, with one consumer asking whether others have experienced the DC/DC converter replacement component being backordered, which caused excessive delays in repairs. That consumer indicated that it took nearly a month to receive the repair, but JLRNA refused to provide any sort of reimbursement for rental expenses while the consumer waited for the delays in receiving repairs. Other consumers had similar complaints, with one user stating the parts "have been back ordered for months." And another user stated they were "told there are a thousand LR's/RR's waiting for the part across the US."[14]

63.     Another Reddit user indicated that they experienced the manifestation of the Defect, with the same warning indicator appearing for "about 30 seconds . . . before a complete

---

[12] https://www.discosportforums.co.uk/threads/dc-dc-converter-failure.15659 (last visited Mar. 27, 2026).

[13] https://www.reddit.com/r/LandRover/comments/1im27ye/stop_safely_electrical_fault_detected (last visited Mar. 27, 2026).

[14] https://www.reddit.com/r/NewDefender/comments/1q4v5g3/anyone_else_dealing_with_the_dcdc_converter_being (last visited Mar. 27, 2026).

20

engine failure occurred," including *loss of steering and brakes and without the ability to turn on the vehicle's hazard lights*. Another user indicated this Defect "is a known safety issue and [JLRNA] has been aware of it – they're already replacing DC-DC converters under warranty and goodwill."[15]

64.     And the manifestation of the Defect is not limited to Class Vehicles with increased mileage. One consumer stated that they "had the car for about 2 weeks" when the Defect manifested.[16]

65.     Another Reddit user in the r/MechanicAdvice subreddit community asked for advice on why the MHEV battery in their 2024 Land Rover may not charge, even after repair. Other users noted that the issue likely was caused by the Defect and advised them to "check if the DC-DC converter is actually functioning properly since that's what charges the 48V battery from the main electrical system." Another user advised that this issue was already part of a "big TSB . . . from [JLRNA] regarding all MHEV built from 2020 to 2025," with the 48V DCDC converter shorting internally.[17]

66.     These examples of consumer complaints illustrate only a portion of the complaints consumers are making on third-party forums, with some consumers indicating that they are bringing these same complaints directly to JLRNA, its authorized dealers, and to NHTSA as well.

67.     Additionally, Class Members regularly bring their Class Vehicles to JLRNA's authorized dealers to complain about the Defect, including to seek repairs of the Defect. For example, immediately after Plaintiff's Class Vehicle manifested the Defect and became unsafe to

---

[15] *Id.*
[16] *Id.*
[17] https://www.reddit.com/r/MechanicAdvice/comments/1rjpznf/2024_landrover_discovery_sport_mhev_battery_not (last visited Mar. 27, 2026).

drive in December 2025, Plaintiff contacted Land Rover Columbia (a JLRNA authorized dealer) to notify JLRNA about the Defect, to complain about manifestation of the Defect, and to seek repair of the Defect. Given that Plaintiff's Class Vehicle was repaired pursuant to the warranty, JLRNA was certainly aware of the Defect in his vehicle and, on information and belief, tracked this same data for other Class Members seeking repairs from JLRNA's authorized dealers, including warranty repairs.

## PLAINTIFF'S FACTS

### Plaintiff James Martin Page

68.    On or about January 13, 2023, Plaintiff purchased a new 2023 Land Rover Defender with Vehicle Identification Number SALE27EU7P2170206 from Land Rover Columbia in South Carolina.   Plaintiff's purchase included the Land Rover 4-year/50,000-mile "New Vehicle Limited Warranty."

69.    The vehicle electronically notifies the driver when maintenance is recommended. Since purchasing the vehicle, it has only required one service.  This service, consisting of routine engine oil and related maintenance, was completed by Land Rover Columbia on August 21, 2024. At that point, Plaintiff's vehicle had marked mileage of 22,169, and service included an overall maintenance inspection, air filter replacement, cabin air filter replacement/cleaning, oil and filter change, and wash/detail.  The timing of this service was in accordance with instructions from Land Rover Columbia, the vehicle's display, and its Maintenance and Service Recommendations.[18]

---

[18] The Maintenance Checklist for Plaintiff's Land Rover Defender 3.0L recommends an oil change and other initial service items after 21,000 miles or every 2 years. *See*, https://www.ownerinfo.landrover.com/document/3E/2023/1645045/proc/G2934562/G3130503? vin=SALE27EU7P2170206 (last visited Mar. 27, 2026).

70. Land Rover Columbia additionally conducted an overall vehicle inspection on August 21, 2024, but found no issues.

71. In or around mid-December 2025, while Plaintiff was moving the vehicle in his driveway, Plaintiff experienced manifestation of the Defect. The vehicle displayed a message stating, "Stop Safely Electrical Fault Detected." Plaintiff promptly stopped and turned off the vehicle; however, when Plaintiff started the vehicle the following day, the error message did not display.

72. On December 23, 2025, while driving on Bluff Road in Columbia, South Carolina, Plaintiff's vehicle again manifested the Defect, when it stalled and displayed the same "Stop Safely Electrical Fault Detected" warning. Plaintiff promptly pulled the vehicle to the side of the road and turned it off.

73. Plaintiff immediately called Land Rover Columbia to tow the vehicle.  However, because of the length of time Land Rover Columbia estimated before it would tow the vehicle, Plaintiff called a private towing company to tow the vehicle to his office to ensure that Plaintiff could provide maximum protection for the vehicle so that it would not sit for an extended period of time on a heavily trafficked road. Later that day, Land Rover Columbia towed the vehicle from Plaintiff's office to Land Rover Columbia.

74. The service team at Land Rover Columbia inspected the vehicle on December 23, 2025, and informed Plaintiff that his vehicle had manifested the Defect and the vehicle's DCDC converter needed to be replaced and that the part should be available in two weeks.  Plaintiff was also informed that the removal and replacement of the existing DCDC converter was covered by the New Vehicle Warranty.

75.     Beginning December 23, 2025, the Land Rover Columbia service team provided weekly updates regarding the necessary part and timeframe.  Initially, the updates maintained the two-week timeline as originally stated; however, beginning in mid-January 2026, the repair timeline became uncertain due to general demand for the part by Land Rover drivers.

76.     On January 30, 2026, Land Rover Columbia called Plaintiff and informed him that the DCDC converter was on backorder with no certainty as to when it would be shipped.

77.     At that time, a member of the Land Rover Columbia service team instructed Plaintiff that he should request that the Manufacturer (*i.e.*, JLRNA) buy back the vehicle in early February 2026; however, Plaintiff has not made such a request because he likes the vehicle and wants to keep it once it operates as it should.

78.     On February 3, 2026, Land Rover Columbia provided Plaintiff an update via voicemail: "still no ETA on parts yet." That voicemail also informed Plaintiff that Land Rover Columbia had "about three [other] cars with the same issue."

79.     On February 11, 2026, Land Rover Columbia provided another update via text: "Good morning, still waiting on parts—no ETA as of yet."

80.     On February 18, 2026, Land Rover Columbia informed Plaintiff that the part had been shipped and should be installed the following week.

81.     On February 25, 2026, Plaintiff received another update from Land Rover Columbia regarding the replacement part and repair via text: "Part was defective, so I had to order another one. There is no ETA on the parts yet. I am waiting on my parts manager to see if they can escalate it."

82.     On March 4, 2026, Land Rover Columbia informed Plaintiff that the necessary replacement part was received and that they were working on the replacement.

24

83. On March 5, 2026, necessary repair work and normal maintenance (i.e., oil and filter changes and tire rotation) were completed, and Plaintiff picked up his car. Upon retrieving his vehicle, Plaintiff received an Invoice and Warranty Report stating that the repair work (i.e., DCDC converter replacement) was covered under the vehicle's warranty, and detailed the work completed as follows:

```
LINE OPCODE TECH TYPE HOURS                                    LIST      NET      TOTAL
A CUSTOMER STATED VEHICLE NEEDS TO BE JUMP STARTED TO START
CONCERN CODE:
     DIAG Electrical fault detective
          402   WL  1.00
        1 433123464 CONVERTER                                205.61    205.61
                                                    1042.83  1042.83  1042.83
                                        61020    104283 TPARTS
                                         3300     20561 TLABOR

TECH:     402 ACTUAL HRS.:    4.68    SOLD HRS.:   1.00

SALE-LBR:  205.61 PTS: 1042.83 MSC:   0.00 LUB:   0.00 SUB:   0.00 TOTAL 1248.44
COST-LBR:   33.00 PTS:  610.20 MSC:   0.00 LUB:   0.00 SUB:   0.00 TOTAL  643.20

41443 86.15.38 0.40
VERIFIED VEHICLE AS NO START/NO POWER. HOOKED JUMP BOX TO VEHICLE
AND CONNECTED VEHICLE TO JLR TOPIX CLOUD AND CHECKED FOR SSM OR TSB'S
AND FOUND NONE PERTINENT. SCANNED DTC FAULT CODES AND FOUND ELECTRICAL
FAULT CODE DTC P0D33-11 (EPICD DC/DC CONVERTER SHORT TO GROUND).
ACCESSED AND REMOVED DC/DC CONVERTER AND INSTALLED NEW COMPONENT. EPICD
SOFTWARE THEN PROGRAMMED AND UPDATED TO LATEST VERSION AND FAULT CODES
CLEARED. FOLLOWING NETWORK INTEGRITY TEST FAULT CODE HAS NOT RETURNED.
*****RVC - TMJOFLMR *****
            *****************************************************
```

*See* Exhibit A, March 5, 2026, Invoice and Warranty Report.

84. Although not specifically stated in the Invoice and Warranty Report, Plaintiff was further informed by a member of the Land Rover Columbia service team that the DCDC converter that failed was replaced with the same part.

85. Because Plaintiff's vehicle was repaired with the same, equally defective part, Plaintiff's vehicle still contains the Defect. As a result of the Defect, Plaintiff has lost confidence in his Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes.

86. Had JLRNA disclosed the existence of the Defect to Plaintiff prior to the purchase of his vehicle, he would not have purchased the vehicle, or else would have paid substantially less for it. Accordingly, Plaintiff overpaid for his vehicle and did not receive the benefit of his bargain.

25

87.     If Plaintiff's vehicle did not contain the Defect, he would consider purchasing a Class Vehicle again in the future. Alternatively, if the Court were to issue an injunction ordering JLRNA to disclose the existence of any defect and to comply with consumer protection laws, Plaintiff would likely purchase a vehicle from JLRNA again in the future.

## TOLLING

88.     Any applicable statute of limitations has been tolled by JLRNA's knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and Class Members were deceived regarding the Class Vehicles and could not reasonably discover the Defect or JLRNA's deception with respect to the Defect.

89.     Plaintiff and Class Members did not discover and did not know of any facts that would have caused a reasonable person to suspect that JLRNA was concealing a defect and/or the Class Vehicles contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiff and Class Members at all relevant times. Within the time period of any applicable statutes of limitation, Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence the existence of the Defect or that JLRNA was concealing the Defect.

90.     At all times, JLRNA is and was under a continuous duty to disclose to Plaintiff and Class Members the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Defect in Class Vehicles.

91. JLRNA knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiff and Class Members reasonably relied on JLRNA's knowing, active, and affirmative concealment.

92. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and JLRNA's fraudulent concealment, and JLRNA is estopped from relying on any statutes of limitation in defense of this action

## CLASS ACTION ALLEGATIONS

93. Plaintiff brings this suit as a class action on behalf of himself and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

94. Plaintiff seeks to represent the following nationwide Class:

> All persons and entities in the United States who purchased or leased a Class Vehicle (the "Nationwide Class" or "Class"):

95. Plaintiff seeks to represent the following state Sub-Class:

> All persons and entities in South Carolina who purchased or leased a Class Vehicle (the "South Carolina Sub-Class"):

96. Excluded from the Class and Sub-Class are: (1) JLRNA, any entity or division in which JLRNA has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.

27

97.    Plaintiff seeks certification of the Class and Sub-Class for all causes of action, unless otherwise specified below. Plaintiff reserves the right to amend or modify the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

98.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling and accrual issues, and ending on the date of entry of judgment.

99.    Numerosity/Ascertainability: The members of the Class and Sub-Class are so numerous that joinder of all members would be unfeasible and impracticable. The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are thousands of individuals in the Class. The identity of such membership is readily ascertainable from JLRNA's records and the records of its authorized dealerships.

100.    Common Questions of Law and Fact Predominate: There are common questions of law and fact as to Plaintiff and all other similarly situated individuals, which predominate over questions affecting only individual members including, without limitation, the following:

    a.    Whether Class Vehicles suffer from the Defect;

    b.    Whether the Defect in the Class Vehicles constitutes an unreasonable safety risk;

    c.    Whether JLRNA knew or reasonably should have known about the Defect and, if so, how long JLRNA knew or reasonably should have known about, the Defect;

    d.    Whether JLRNA knew or reasonably should have known about the Defect before it sold and leased Class Vehicles to Plaintiff and Class Members;

e.  Whether JLRNA has an ongoing duty to disclose the Defect to Plaintiff and Class Members;

f.  Whether JLRNA should be declared financially responsible for notifying Plaintiff and Class Members of problems with the Class Vehicles and for the costs and expenses of remediating the Defect (if not already covered by warranty or other coverage);

g.  Whether JLRNA is obligated to inform Plaintiff and Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Engine System and/or its components (if not already covered by warranty or other coverage);

h.  Whether JLRNA breached the express warranty;

i.  Whether JLRNA breached the implied warranty of merchantability;

j.  Whether JLRNA violated consumer protection statutes;

k.  Whether Plaintiff and Class Members overpaid for their Class Vehicles because they purchased their Class Vehicles, which contained the Defect, without properly being informed of the existence of the Defect, and thus did not receive the benefit of their bargain;

l.  Whether Plaintiff and Class Members have been injured by JLRNA's misconduct, and the proper measure of their losses as a result of those injuries;

m.  Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount and nature of such damages; and

29

n.     Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction.

101.    Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the Defect without properly being informed of the existence of the Defect.

102.    Adequacy of Representation: Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent the members of the Class and Plaintiff. Plaintiff's attorneys are experienced in prosecuting class actions and consumer fraud and product liability cases and are committed to vigorously prosecuting this action on behalf of the members of the class.

103.    Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of JLRNA's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the average price point of the televisions and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for JLRNA's misconduct. Absent a class action, Class Members will continue to incur damages, and JLRNA's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

30

104.    The claims presented in this case predominate over any questions of law or fact affecting individual Class Members.

105.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

106.    Alternatively, should the Court find that Plaintiff cannot meet the requirements of Federal Rule of Civil Procedure 23(b)(2) or 23(b)(3), certification under Federal Rule of Civil Procedure 23(c)(4) would still be appropriate, because there are issues of liability and damages that are susceptible to class-wide proof. Plaintiff reserves the right to address these issues, if necessary, in the forthcoming motion for class certification, following fulsome discovery.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
**(On behalf of Plaintiff and the Proposed Class, or, in the alternative, the Sub-Class)**

107.    Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

108.    Plaintiff brings this count on behalf of himself and the Class or, alternatively, on behalf of the Sub-Class.

109.    JLRNA is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

110.    With respect to leases, JLRNA is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

111.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

31

112.    JLRNA provided all purchasers and lessees of the Class Vehicles, including Plaintiff and Class Members, with an express warranty—the New Vehicle Limited Warranty—described herein, which became a material part of the bargain. Accordingly, JLRNA's express warranty is an express warranty under New Jersey and South Carolina law.

113.    JLRNA's New Vehicle Limited Warranty is limited to four (4) years from the date of first use or 50,000 miles, whichever occurs first.

114.    JLRNA's New Vehicle Limited Warranty "covers any factory-supplied component of the [Class Vehicle] that is defective during the basic warranty period," except items specifically excluded.

115.    The DCDC converter—and the Defect—at issue is and was at all relevant times not excluded by the New Vehicle Limited Warranty.  The parts and labor are and were at all relevant times therefore covered by the New Vehicle Limited Warranty.

116.    The New Vehicle Limited Warranty provides that the "warranties are in favor of the original purchaser and each subsequent owner during the respective warranty periods."[19]

117.    The New Vehicle Limited Warranty formed part of the basis of the bargain that was reached when Plaintiff and Class Members purchased or leased their Class Vehicles.

118.    JLRNA breached the express warranty through the acts and omissions described above. Specifically, the Class Vehicles sold by JLRNA to Plaintiff and Class Members were not in merchantable condition, were not fit for the ordinary purpose for which cars are used, and/or were not of the same quality as those generally acceptable in the trade.  In fact, the Class Vehicles

---

[19] *See Summary of Warranties – Land Rover*, https://www.ownerinfo.landrover.com/document/3E/2023/1645045/proc/G2934539/G2934550? vin=SALE27EU7P2170206 (last visited Mar. 27, 2026).

were defective as designed and from the point of manufacture and sale, thus rendering the product unmerchantable at the time of purchase.

119.	Plaintiff and Class Members have had sufficient direct dealing with either JLRNA or its agents (i.e., dealerships and customer support) to establish privity of contract between JLRNA, on one hand, and Plaintiff and Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and Class Members are the intended third-party beneficiaries of contracts between JLRNA and its distributors and dealers, and specifically, of JLRNA's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer, that is, Plaintiff and Class Members.

120.	Any attempt by JLRNA to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because JLRNA knowingly sold or leased defective Class Vehicles without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by JLRNA and unreasonably favored JLRNA. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between JLRNA and Plaintiff and Class Members.

121.	Further, the New Vehicle Limited Warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Plaintiff and Class Members whole, because on information and belief,

33

JLRNA has failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time. Instead, JLRNA has only provided—or promised to provide—repair of the Defect with the same, equally defective component(s), without actually or meaningfully remediating the Defect. Moreover, repairs relating to the Defect have experienced significant delays due to insufficient stock of necessary replacement components, despite JLRNA's knowledge of the Defect and that consumers would experience manifestation of the Defect.

122.   Plaintiff notified JLRNA of the breach when he originally brought the Class Vehicle in for repair with Land Rover Columbia. Moreover, following repair—which merely replaced a defective component with the same, equally defective component—which failed to remediate the Defect, Plaintiff, through his counsel, provided notice to JLRNA, through its agent, Land Rover Columbia on March 18, 2026. To date, JLRNA has not provided meaningful or adequate remediation of the Defect.

123.   Given that JLRNA already had an opportunity to cure its breach and has failed to do so and, to date, has failed to meaningfully or adequately remediate the Defect, any such notice to JLRNA affording them an opportunity—or a further opportunity—to cure the breach of warranty would be futile.

124.   Despite Plaintiff's provided notice, Plaintiff was not required to notify JLRNA of the breach because JLRNA was on notice of the Defect from the complaints and service requests it received from Class Members, including those formal complaints submitted to NHTSA, and through other internal sources.

125.   As a direct and proximate cause of JLRNA's breach of the applicable express warranties, Plaintiff and Class Members suffered, and continue to suffer, damages, including

34

economic damages at the point of sale or lease and diminution in value of their Class Vehicles. Additionally, Plaintiff and Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair as well as additional losses, including for excessive delays awaiting repairs. Moreover, as a result of the Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

126.   As a result of JLRNA's breach of the express warranty, Plaintiff and Class Members are entitled to legal and equitable relief against JLRNA, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

**<u>SECOND CAUSE OF ACTION</u>**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff and the Proposed Class, or, in the alternative, the Sub-Class)**

127.   Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

128.   Plaintiff brings this count on behalf of himself and the Class or, alternatively, on behalf of the Sub-Class.

129.   JLRNA is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

130.   With respect to leases, JLRNA is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

131.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

132.    JLRNA knew or had reason to know of the specific use and purpose for which the Class Vehicles were purchased or leased. JLRNA directly sold and marketed Class Vehicles to customers through authorized dealers, like those from whom Plaintiff and Class Members purchased or leased their Class Vehicles, for the intended purpose of consumers purchasing the Class Vehicles. JLRNA knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiff and Class Members, with no modification to the defective Class Vehicles.

133.    JLRNA provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

134.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were designed, manufactured, supplied, distributed, marketed, advertised, and/or sold by JLRNA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

135.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective at the time of sale or lease and thereafter as more fully described above. JLRNA knew of this Defect at the time these sale or lease transactions occurred.

136.    Where a product is purchased for a particular purpose, and that purpose is also the intended and ordinary purpose of the product, the implied warranties of merchantability and of fitness for a particular purpose may be treated the same under applicable state law. Here, the Class Vehicles were designed, manufactured, marketed, advertised, supplied, and sold for a particular

36

purpose—to provide Plaintiff and Class Members with reliable, durable, and safe transportation. The intended and ordinary purposes of Class Vehicles is likewise to provide Plaintiff and Class Members with reliable, durable, and safe transportation. Plaintiff and Class Members purchased the Class Vehicles for those purposes. However, the Class Vehicles were unfit for these intended, ordinary, and particular purposes.

137.   As a result of JLRNA's breach of the applicable implied warranties, Plaintiff and Class Members suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

138.   JLRNA's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

139.   Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of JLRNA's conduct described herein.

140.   Plaintiff and Class Members have had sufficient direct dealing with either JLRNA or its agents (i.e., dealerships and customer support) to establish privity of contract between JLRNA, on one hand, and Plaintiff and Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and Class Members are the intended third-party beneficiaries of contracts between JLRNA and its distributors and dealers, and specifically, of JLRNA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty

37

agreements were designed for and intended to benefit the consumer, that is, Plaintiff and Class Members.

141.   Plaintiff notified JLRNA of the breach when he originally brought the Class Vehicle in for repair with Land Rover Columbia. Moreover, following repair—which merely replaced a defective component with the same, equally defective component—which failed to remediate the Defect, Plaintiff, through his counsel, provided notice to JLRNA, through its agent, Land Rover Columbia on March 18, 2026. To date, JLRNA has not provided meaningful or adequate remediation of the Defect.

142.   Given that JLRNA already had an opportunity to cure its breach and has failed to do so and, to date, has failed to meaningfully or adequately remediate the Defect, any such notice to JLRNA affording them an opportunity—or a further opportunity—to cure the breach of warranties would be futile.

143.   Despite Plaintiff's provided notice, Plaintiff was not required to notify JLRNA of the breach because JLRNA was on notice of the Defect from the complaints and service requests it received from Class Members, including those formal complaints submitted to NHTSA, and through other internal sources.

144.   As a direct and proximate cause of JLRNA's breach of the implied warranty, Plaintiff and Class Members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease and diminution in value of their Class Vehicles. Additionally, Plaintiff and Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair as well as additional losses, including for excessive delays awaiting repairs.

145. As a direct and proximate result of JLRNA's breach of the implied warranty of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**Breach of Implied Warranty of Fitness for Particular Purpose**
**(On behalf of Plaintiff and the Proposed Class, or, in the alternative, the Sub-Class)**

146. Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

147. Plaintiff brings this count on behalf of himself and the Class or, alternatively, on behalf of the Sub-Class.

148. JLRNA is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

149. With respect to leases, JLRNA is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

150. The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

151. JLRNA knew or had reason to know of the specific use and purpose for which the Class Vehicles were purchased or leased. JLRNA directly sold and marketed Class Vehicles to customers through authorized dealers, like those from whom Plaintiff and Class Members purchased or leased their Class Vehicles, for the intended purpose of consumers purchasing the Class Vehicles. JLRNA knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiff and Class Members, with no modification to the defective Class Vehicles.

39

152. JLRNA provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are fit for the particular purposes for which they were sold.

153. This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were designed, manufactured, supplied, distributed, marketed, advertised, and/or sold by JLRNA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

154. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for particular purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective at the time of sale or lease and thereafter as more fully described above. JLRNA knew of this Defect at the time these sale or lease transactions occurred.

155. Where a product is purchased for a particular purpose, and that purpose is also the intended and ordinary purpose of the product, the implied warranties of merchantability and of fitness for a particular purpose may be treated the same under applicable state law. Here, the Class Vehicles were designed, manufactured, marketed, advertised, supplied, and sold for a particular purpose—to provide Plaintiff and Class Members with reliable, durable, and safe transportation. The intended and ordinary purpose of Class Vehicles is likewise to provide Plaintiff and Class Members with reliable, durable, and safe transportation. Plaintiff and Class Members purchased the Class Vehicles for those purposes. However, the Class Vehicles were unfit for these intended, ordinary, and particular purposes.

156. As a result of JLRNA's breach of the applicable implied warranties, Plaintiff and Class Members suffered, and continue to suffer, an ascertainable loss of money, property, and/or

value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

157. JLRNA's actions, as complained of herein, breached the implied warranty that the Class Vehicles were fit for the particular purpose for which they were purchased in violation of the Uniform Commercial Code and relevant state law.

158. Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of JLRNA's conduct described herein.

159. Plaintiff and Class Members have had sufficient direct dealing with either JLRNA or its agents (i.e., dealerships and customer support) to establish privity of contract between JLRNA, on one hand, and Plaintiff and Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and Class Members are the intended third-party beneficiaries of contracts between JLRNA and its distributors and dealers, and specifically, of JLRNA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer, that is, Plaintiff and Class Members.

160. Plaintiff notified JLRNA of the breach when he originally brought the Class Vehicle in for repair with Land Rover Columbia. Moreover, following repair—which merely replaced a defective component with the same, equally defective component—which failed to remediate the Defect, Plaintiff, through his counsel, provided notice to JLRNA, through its agent,

41

Land Rover Columbia on March 18, 2026. To date, JLRNA has not provided meaningful or adequate remediation of the Defect.

161.    Given that JLRNA already had an opportunity to cure its breach and has failed to do so and, to date, has failed to meaningfully or adequately remediate the Defect, any such notice to JLRNA affording them an opportunity—or a further opportunity—to cure the breach of warranties would be futile.

162.    Despite Plaintiff's provided notice, Plaintiff was not required to notify JLRNA of the breach because JLRNA was on notice of the Defect from the complaints and service requests it received from Class Members, including those formal complaints submitted to NHTSA, and through other internal sources.

163.    As a direct and proximate cause of JLRNA's breach of the implied warranty, Plaintiff and Class Members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease and diminution in value of their Class Vehicles. Additionally, Plaintiff and Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair as well as additional losses, including for excessive delays awaiting repairs.

164.    As a direct and proximate result of JLRNA's breach of the implied warranty of fitness for a particular purpose, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Violation of Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, *et seq*.**
**(On behalf of Plaintiff and the Proposed Class, or, in the alternative, the Sub-Class)**

165.    Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

166.    Plaintiff brings this count on behalf of himself and the Class or, alternatively, on behalf of the Sub-Class.

167.    Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

168.    JLRNA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

169.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

170.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

171.    JLRNA's express warranty is a "written warranty" within the meaning of 15 U.S.C. §2301(6).

172.    JLRNA's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

173.    JLRNA breached the express warranty and the implied warranty, including JLRNA's New Vehicle Limited Warranty, through the conduct described above.

174.    Plaintiff and Class Members notified JLRNA of the breaches within a reasonable time and/or were not required to do so. JLRNA was also on notice of the Defect from, among other

43

sources, the complaints and service requests it received from Class Members and its dealers and, on information and belief, through its own testing and internal sources.

175. JLRNA's breach of the express warranty and the implied warranty deprived Plaintiff and Class Members of the benefits of their bargains.

176. Plaintiff and Class Members have had sufficient direct dealing with either JLRNA or its agents (i.e., dealerships and customer support) to establish privity of contract between JLRNA, on one hand, and Plaintiff and Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and Class Members are the intended third-party beneficiaries of contracts between JLRNA and its distributors and dealers, and specifically, of JLRNA's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer, that is, Plaintiff and Class Members.

177. JLRNA breached these warranties, as described in more detail above. Without limitation, the Class Vehicles contain a Defect that puts in jeopardy the safety of drivers, passengers, and others on the road. The Class Vehicles share a common defect in that they are designed and manufactured with defective materials and/or with poor workmanship. Contrary to JLRNA's representations about its vehicles, the Class Vehicles are defective in manufacture, materials and/or workmanship and are unsafe.

178. Plaintiff notified JLRNA of the breach when he originally brought the Class Vehicle in for repair with Land Rover Columbia. Moreover, following repair—which merely replaced a defective component with the same, equally defective component—which failed to remediate the Defect, Plaintiff, through his counsel, provided notice to JLRNA, through its agent,

44

Land Rover Columbia on March 18, 2026. To date, JLRNA has not provided meaningful or adequate remediation of the Defect.

179.    Given that JLRNA already had an opportunity to cure its breach and has failed to do so and, to date, has failed to meaningfully or adequately remediate the Defect, any such notice to JLRNA affording them an opportunity—or a further opportunity—to cure the breach of warranties would be futile.

180.    Despite Plaintiff's provided notice, Plaintiff was not required to notify JLRNA of the breach because JLRNA was on notice of the Defect from the complaints and service requests it received from Class Members, including those formal complaints submitted to NHTSA, and through other internal sources.

181.    At the time of sale or lease of each Class Vehicle, JLRNA knew or otherwise reasonably should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' Defect and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford JLRNA a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

182.    Plaintiff and Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.

183.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

45

184.    As a direct and proximate result of JLRNA's breach of express and implied warranties, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Violation of the New Jersey Consumer Fraud Act**
**N.J. Rev. Stat. § 56:8-1, *et seq.***
**(On behalf of Plaintiff and the Proposed Class, or, in the alternative, the Sub-Class)**

185.    Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

186.    Plaintiff brings this count on behalf of himself and the Class or, alternatively, on behalf of the Sub-Class.

187.    Plaintiff, Class Members, and JLRNA are "persons" within the meaning of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1(d).

188.    JLRNA engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

189.    The NJCFA protects consumers against "[t]he act, the use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J. Stat. Ann. § 56:8-2.

190.    JLRNA participated in deceptive trade practices that violated the NJCFA as described throughout this Complaint. By failing to disclose the Defect; by concealing the Defect; by marketing and advertising the Class Vehicles as safe, reliable, well-engineered, and of high quality; and by presenting itself as a reputable manufacturer that valued the safety, performance, and reliability of its vehicles, JLRNA knowingly and intentionally misrepresented and omitted

46

material facts in connection with the sale or lease of the Class Vehicles. JLRNA systematically misrepresented, concealed, suppressed, or omitted material facts relating to the existence of the Defect in the Class Vehicles in the course of its business.

191. JLRNA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

192. JLRNA's unfair and deceptive acts or practices occurred repeatedly in JLRNA's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

193. JLRNA knew that the Class Vehicles suffered from an inherent Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

194. JLRNA knew or reasonably should have known that its conduct violated the NJCFA.

195. JLRNA was under a duty to Plaintiff and Class Members to disclose the existence of the Defect and the defective nature of the Class Vehicles because:

    a.    JLRNA was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

    b.    The omitted facts were material because they directly impact the safety of the Class Vehicles;

    c.    JLRNA knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiff and Class Members;

47

d.  JLRNA made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and

e.  JLRNA actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

196.  By failing to disclose the existence of the Defect, JLRNA knowingly and intentionally concealed material facts and breached its duty not to do so.

197.  The facts concealed or not disclosed by JLRNA to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles, or else pay a substantially lower price for them. The Defect, when it manifests, can cause the Class Vehicle to stall and cease operation, including while the vehicle is in motion, which poses a serious safety risk to drivers, passengers, and others on the road. Had Plaintiff and Class Members known about the Defect and the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or else would have paid substantially less for them.

198.  JLRNA concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles in order to induce Plaintiff and Class Members to act thereon. Plaintiff and Class Members justifiably relied on JLRNA's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of JLRNA's defective Class Vehicles.

199.  JLRNA continued to conceal the existence of the Defect and the defective nature of the Class Vehicles even after Plaintiff and Class Members began to report the problems. Indeed, JLRNA continues deny the existence of the Defect to this day

200.     Plaintiff and Class Members are reasonable consumers who do not expect that their Class Vehicles would contain the Defect and its related, serious safety risks. That is the reasonable and objective consumer expectation for vehicles.

201.     As a result of JLRNA's misconduct, Plaintiff and Class Members have suffered, and continue to suffer, actual damages and/or injury in fact in that the Class Vehicles are defective and require repairs or replacement that will meaningfully and actually remediate the Defect.

202.     As a direct and proximate result of JLRNA's unfair or deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

203.     Plaintiff and Class Members seek actual damages against JLRNA in an amount to be determined at trial and statutory, treble, and/or punitive damages, as well as an order enjoining JLRNA' unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under N.J. Stat. Ann. § 56:8-19.

204.     JLRNA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class Members' rights and well-being, in order to enrich JLRNA. JLRNA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**SIXTH CAUSE OF ACTION**
**Violation of the New Jersey Products Liability Act**
**N.J. Rev. Stat. § 2A:58C-1,** *et seq.*
**(On behalf of Plaintiff and the Proposed Class, or, in the alternative, the Sub-Class)**

205.     Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

206. Plaintiff brings this count on behalf of himself and the Class or, alternatively, on behalf of the Sub-Class.

207. JLRNA designed, manufactured, marketed, advertised, and sold Class Vehicles, which contained a serious safety Defect.

208. At the time of sale or lease, and at all relevant times thereafter, the Class Vehicles were not fit, suitable, or safe for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective at the time of sale or lease and thereafter as more fully described above. JLRNA knew of this Defect at the time these sale or lease transactions occurred.

209. The Class Vehicles contained the Defect at all relevant times, including prior to, at the point of, and after the point of sale or lease. The Defect, when it manifests, can cause the Class Vehicle to stall and cease operation, including while the vehicle is in motion, and poses a serious safety risk to drivers, passengers, and others on the road.

210. Moreover, even after repair—if repair of the Defect ever purportedly occurred in a given Class Vehicle—the repair only replaced a defective component with the same, equally defective component, such that the Defect was never meaningfully or adequately remediated through repair or replacement. Thus, even after a purported repair, the Defect still exists in the Class Vehicles and can manifest, causing the Class Vehicle to stall and cease operation, including while the vehicle is in motion. Accordingly, even after a reported repair, the Defect still poses a serious safety risk to drivers, passengers, and others on the road.

211. This Defect, and its related serious safety risks, existed in all Class Vehicles at the time the Class Vehicles left JLRNA's control.

212.    As described above, JLRNA knew about, or otherwise reasonably should have known about the existence of the Defect in Class Vehicles. Despite its knowledge that the Class Vehicles contained this serious safety Defect, JLRNA did not disclose, or actively concealed, the existence of the Defect from Plaintiff and Class Members—and continues to do so. Despite its knowledge that the Class Vehicles contained this serious safety Defect, JLRNA did not disclose, or actively concealed, the existence of the Defect from Plaintiff and Class Members—and continues to do so.

213.    JLRNA not only designed, manufactured, and sold (through its authorized dealers) the Class Vehicles, but it also marketed and advertised the Class Vehicles as safe, reliable vehicles that were fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. JLRNA never disclosed the existence of the Defect in the Class Vehicles in any of its marketing and advertising materials, or in any statements to the consuming public. Moreover, even after first sale or lease of the Class Vehicles, JLRNA has never disclosed the existence of the Defect in Class Vehicles or admitted that the Defect poses a serious safety risk to drivers, passengers, and others on the roadway. To date, JLRNA continues not to disclose, or actively conceal, the existence of the Defect.

214.    Had Plaintiff and Class Members known about the Defect and the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or else would have paid substantially less for them. As a direct and proximate result of JLRNA's misconduct, Plaintiff and Class Members overpaid for the Class Vehicles and have been forced to pay other costs, including but not limited to costs associated with repair of the Defect and excessive delays for such repairs. As a direct and proximate result of JLRNA's misconduct, Plaintiff and Class Members did not receive the benefit of their bargain.

215.   Accordingly, JLRNA is strictly liable for the damages caused to Plaintiff and Class Members by the unreasonably dangerous Class Vehicles, which contain the serious safety Defect. These damages include, but are not necessarily limited to, the purchase or lease price of the Class Vehicle and any other related costs, including costs associated with repair of the Defect and excessive delays for such repairs.

### SEVENTH CAUSE OF ACTION
**Violation of the South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. § 39-5-10, *et seq.***
**(On behalf of Plaintiff and the Proposed Sub-Class)**

216.   Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

217.   Plaintiff brings this count on behalf of himself and the Sub-Class.

218.   Plaintiff, Sub-Class Members, and JLRNA are "persons" within the meaning of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10(a).

219.   JLRNA engaged in "trade" and "commerce" within the meaning of S.C. Code Ann. § 39-5-10(b).

220.   The SCUTPA protects consumers against "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a).

221.   JLRNA participated in unfair and deceptive acts or practices that violated the SCUTPA as described throughout this Complaint. By failing to disclose the Defect; by concealing the Defect; by marketing and advertising the Class Vehicles as safe, reliable, well-engineered, and of high quality; and by presenting itself as a reputable manufacturer that valued the safety, performance, and reliability of its vehicles, JLRNA knowingly and intentionally misrepresented

52

and omitted material facts in connection with the sale or lease of the Class Vehicles. JLRNA systematically misrepresented, concealed, suppressed, or omitted material facts relating to the existence of the Defect in the Class Vehicles in the course of its business.

222. JLRNA also engaged in unfair and deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

223. JLRNA's unfair and deceptive acts or practices occurred repeatedly in JLRNA's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

224. JLRNA knew that the Class Vehicles suffered from an inherent Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

225. JLRNA knew or reasonably should have known that its conduct violated the SCUTPA.

226. JLRNA was under a duty to Plaintiff and Sub-Class Members to disclose the existence of the Defect and the defective nature of the Class Vehicles because:

      a.     JLRNA was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

      b.     The omitted facts were material because they directly impact the safety of the Class Vehicles;

      c.     JLRNA knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiff and Sub-Class Members;

       d.     JLRNA made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and

       e.     JLRNA actively concealed the defective nature of the Class Vehicles from Plaintiff and Sub-Class Members.

227.    By failing to disclose the existence of the Defect, JLRNA knowingly and intentionally concealed material facts and breached its duty not to do so.

228.    The facts concealed or not disclosed by JLRNA to Plaintiff and Sub-Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles, or else pay a substantially lower price for them. The Defect, when it manifests, can cause the Class Vehicle to stall and cease operation, including while the vehicle is in motion, which poses a serious safety risk to drivers, passengers, and others on the road. Had Plaintiff and Sub-Class Members known about the Defect and the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or else would have paid substantially less for them.

229.    JLRNA concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles in order to induce Plaintiff and Sub-Class Members to act thereon. Plaintiff and Sub-Class Members justifiably relied on JLRNA's omissions to their detriment. This detriment is evident from Plaintiff's and Sub-Class Members' purchase or lease of JLRNA's defective Class Vehicles.

230.    JLRNA continued to conceal the existence of the Defect and the defective nature of the Class Vehicles even after Plaintiff and Sub-Class Members began to report the problems. Indeed, JLRNA continues deny the existence of the Defect to this day

231. Plaintiff and Sub-Class Members are reasonable consumers who do not expect that their Class Vehicles would contain the Defect and its related, serious safety risks. That is the reasonable and objective consumer expectation for vehicles.

232. As a result of JLRNA's misconduct, Plaintiff and Sub-Class Members have suffered, and continue to suffer, actual damages and/or injury in fact in that the Class Vehicles are defective and require repairs or replacement that will meaningfully and actually remediate the Defect.

233. As a direct and proximate result of JLRNA's unfair and deceptive acts or practices, Plaintiff and Sub-Class Members have suffered and will continue to suffer actual damages.

234. Plaintiff and Sub-Class Members seek actual damages against JLRNA in an amount to be determined at trial and statutory, treble, and/or punitive damages, as well as an order enjoining JLRNA' unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under South Carolina law.

235. JLRNA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Sub-Class Members' rights and well-being, in order to enrich JLRNA. JLRNA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**EIGHTH CAUSE OF ACTION**
**Fraud and Fraudulent Concealment**
**(On behalf of Plaintiff and the Proposed Class, or, in the alternative, the Sub-Class)**

236.    Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

237.    Plaintiff brings this count on behalf of himself and the Class or, alternatively, on behalf of the Sub-Class.

238.    JLRNA knew that the Class Vehicles contained the Defect, were defectively designed and/or manufactured and were not suitable for their intended use.

239.    JLRNA concealed from and failed to disclose to Plaintiff and Class Members the existence of the Defect and the defective nature of the Class Vehicles.

240.    JLRNA was under a duty to Plaintiff and Class Members to disclose the existence of the Defect and the defective nature of the Class Vehicles because:

    a.    JLRNA was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

    b.    The omitted facts were material because they directly impact the safety of the Class Vehicles;

    c.    JLRNA knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiff and Class Members;

    d.    JLRNA made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and

    e.    JLRNA actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

241. The facts concealed or not disclosed by JLRNA to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles, or else pay a substantially lower price for them. The Defect, when it manifests, can cause the Class Vehicle to stall and cease operation, including while the vehicle is in motion, which poses a serious safety risk to drivers, passengers, and others on the road. Had Plaintiff and Class Members known about the Defect and the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or else would have paid substantially less for them.

242. JLRNA concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles in order to induce Plaintiff and Class Members to act thereon. Plaintiff and Class Members justifiably relied on JLRNA's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of JLRNA's defective Class Vehicles.

243. JLRNA continued to conceal the existence of the Defect and the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, JLRNA continues to deny the existence of the Defect to this day.

244. As a direct and proximate result of JLRNA's misconduct, Plaintiff and Class Members have suffered, and continue to suffer, actual damages. Plaintiff and Class Members reserve their right to elect either to (a) rescind their purchase or lease of the Class Vehicles and obtain restitution, or (b) affirm their purchase or lease of the Class Vehicles and recover damages.

245. JLRNA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class Members' rights and well-being, in order

to enrich JLRNA. JLRNA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## NINTH CAUSE OF ACTION
### Unjust Enrichment
**(On behalf of Plaintiff and the Proposed Class or, in the alternative, the Sub-Class)**

246.    Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in all preceding paragraphs as though fully set forth herein.

247.    Plaintiff brings this count on behalf of himself and the Class or, alternatively, on behalf of the Sub-Class.

248.    JLRNA has received and retained a benefit from Plaintiff and Class Members, and inequity has resulted.

249.    JLRNA has benefitted from selling and leasing defective Class Vehicles whose value was artificially inflated by JLRNA's concealment of the Defect, and Plaintiff and Class Members have overpaid for the Class Vehicles and have been forced to pay other costs, including but not limited to costs associated with repair of the Defect and excessive delays for such repairs.

250.    As a result of its wrongful acts, concealments, and omissions of the Defect in its Class Vehicles, as set forth above, JLRNA charged higher prices for the Class Vehicles than their true value. Plaintiff and Class Members paid a higher price for their Class Vehicles to JLRNA's authorized distributors and dealers, which are in JLRNA's control, than they otherwise would have had JLRNA disclosed the existence of the Defect. JLRNA also reaps huge profits from the sale of its vehicles through its authorized distributors and dealers.

251.    Through the purchase of Class Vehicles, Plaintiff and Class Members conferred a benefit on JLRNA.

58

252.   Through the payment of costs and expenses relating to repair of the Defect in the Class Vehicles, Plaintiff and Class Members conferred a benefit on JLRNA.

253.   It is inequitable for JLRNA to retain these benefits.

254.   Plaintiff and Class Members were not aware—and could not have been aware—of the existence of the Defect or of the true facts regarding the nature of the Class Vehicles. Plaintiff and Class Members did not benefit from JLRNA's conduct.

255.   JLRNA knowingly accepted the benefits of its unjust conduct.

256.   As a result of JLRNA's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment against JLRNA and for the following relief:

a.   An order certifying the proposed Class and Sub-Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b.   A declaration that JLRNA is financially responsible for notifying all Class Members about the Defect in the Class Vehicles;

c.   An order enjoining JLRNA from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling JLRNA to issue a voluntary recall for the Class Vehicles; compelling JLRNA to remediate and eliminate the Defect from every Class Vehicle; enjoining JLRNA from selling the Class Vehicles with the misleading information; and/or compelling JLRNA to reform its

59

warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

d.  An award for all actual, general, special, incidental, statutory, and punitive damages to which Plaintiff and Class Members are entitled;

e.  Disgorgement of all profits and unjust enrichment that JLRNA obtained from Plaintiff and Class Members as a result of JLRNA'S unlawful, unfair, and fraudulent acts and practices alleged herein;

f.  An award of attorneys' fees and costs to Plaintiff and Class Members, as allowed by law;

g.  An award of pre-judgment and post-judgment interest, as provided by law; and

h.  Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all claims in this Complaint so triable.

Dated: March 31, 2026                    Respectfully submitted,

/s/ *Mitchell Breit*
Mitchell Breit (N.J. Bar No. 43741989)
**MILBERG, PLLC**
405 E. 50th Street
New York, NY 10022
Tel:    (630) 796-0903
Fax:    (865) 522-0049
mbreit@milberg.com

Adam A. Edwards (*pro hac vice* forthcoming)
William A. Ladnier (*pro hac vice* forthcoming)
**MILBERG, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel:    (865) 247-0080
Fax:    (865) 522-0049

60

aedwards@milberg.com
wladnier@milberg.com


T. Christopher Tuck (*pro hac vice* forthcoming)
Robert S. Wood (*pro hac vice* forthcoming)
T.A.C. Hargrove, II (*pro hac vice* forthcoming)
**ROGERS, PATRICK,WESTBROOK &**
  **BRICKMAN, L.L.C.**
1037 Chuck Dawley Boulevard
Building A
Mt. Pleasant, SC  29464
Tel:    (843) 727.6500
ctuck@rpwb.com
bwood@rpwb.com
thargrove@rpwb.com

*Counsel for Plaintiff
and the Proposed Classes*